IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

**WESLEY WAYNE HUTCHINS**                                                     **PLAINTIFF**

v.                                    No. 4:18CV00109 JLH/PSH

**NANCY A. BERRYHILL,**
**Deputy Commissioner for Operations,**
**performing the duties and functions**
**not reserved to the Commissioner of**
**Social Security**                                                        **DEFENDANT**

## FINDINGS AND RECOMMENDATION

### INSTRUCTIONS

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge J. Leon Holmes. You may file written objections to all or part of this Recommendation. If you do so, those objections must: (1) specifically explain the factual and/or legal basis for your objection; and (2) be received by the Clerk of this Court within fourteen (14) days of this Recommendation. By not objecting, you may waive the right to appeal questions of fact.

### DISPOSITION

Plaintiff Wesley Wayne Hutchins ("Hutchins"), in his appeal of the final decision of the Commissioner of the Social Security Administration (defendant "Berryhill") to deny his claim for Disability Insurance benefits (DIB) and supplemental security income (SSI), contends the Administrative Law Judge ("ALJ") erred: (1) in giving controlling weight to the opinions of non-examining state agency consultants over Hutchins' treating neurologist; and (2) in failing to address or evaluate new and material evidence in reaching her decision. The parties have ably summarized the medical records and the testimony given at the administrative hearing conducted

1

on August 14, 2017. (Tr. 46-78). The Court has carefully reviewed the record to determine whether there is substantial evidence in the administrative record to support Berryhill's decision. 42 U.S.C. § 405(g). The relevant period for purposes of Hutchins' disability determination is from August 2, 2015, his alleged onset date, through October 3, 2017, the date of the ALJ's decision in this proceeding.

*Administrative Hearing:*

At the June 2017 administrative hearing Hutchins was 42, had achieved a GED, earned 24 hours of college credits, and earned an industrial electrical license as well as a high pressure boiler license. He stated he was 6' and weighed 298 pounds, was divorced and lived alone. He described his past relevant work, tracing it backwards from August 2015 until November 2005. These jobs were uniformly heavy exertion jobs, requiring him to lift 100 pounds. He confirmed that he last worked on August 2, 2015, when he injured his back and went to the hospital. His job from 2008-2013 was as a high pressure boiler operator. He stated he left that job for personal reasons. From 2013 until roughly June of 2015, he did not work full time.

Hutchins described limited daily activities, including reading, doing small loads of laundry, and lying down an hour or more each day.[1] When asked by the ALJ what prevents him from working, Hutchins replied: "My legs, my back, muscle spasms, not being able to strap a tool belt on my side, and climb 110 foot in the air or 40 foot in the air." (Tr. 60). Hutchins continued that he lacked mobility and experienced numbness in his legs, was taking muscle relaxers and pain medications three times daily, "and it really just, and then the frustration of not being able to do the things that I've done from the past of doing." (Tr. 60). Hutchins described

---

[1]The description of daily activities was similar to the activities outlined in Hutchins' Function Report he executed in June 2016, except that he listed as places he regularly went as "ball game, church, deer camp." (Tr. 314).

2

some treatment for his back pain, and allowed that the next step may be major surgery. He also testified to having migraine headaches, somewhat eased by February 2017 facial surgery, and currently being treated with Advil. Hutchins stated he was currently taking nortrptyline daily, trazanidine three times daily, hydrocodone three times daily, and lisonipril daily. According to him, he recently discontinued use of gabapentin. Side effects of his medications were dry mouth and sleepiness, and the need to stay out of direct sunlight.

Hutchins estimated he could sit less than 30 minutes, ride in a vehicle for 30-60 minutes, and has trouble lifting, walking, climbing, reaching overhead, gripping, and picking up items from the floor. When asked if there was a reason he could not perform a desk job, he answered: "The numbness through my jaw, through my back. It would, I just, and the psychological. . . I just don't see it. Psychologically." (Tr. 69-70). He stated he could not sit for 6 hours a day. (Tr. 49-68).

Eukay Horsman ("Horsman"), a vocational expert, testified. The ALJ posed a hypothetical question to Horsman, asking her to assume a worker of Hutchins' age and educational and work background who could perform light work but only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, and could occasionally overhead reach. Horsman indicated such a worker could not perform Hutchins' past relevant work, but could perform other jobs, such as assembler of small parts or sorter of agricultural produce. (Tr. 63-64). A second hypothetical question was posed, asking Horsman if jobs would be available if the worker was limited to sedentary work, coupled with the other limitations from the initial hypothetical question. Horsman identified the jobs of surveillance system monitor and callout operator as available to such a worker. In a third hypothetical, Horsman was asked to assume

the worker would miss two days each month. Horsman identified no jobs for such a worker. (Tr. 71-75).

*ALJ's Decision:*

The ALJ, in her October 2017 decision, found Hutchins had the following severe impairments: degenerative disc disease of the lumbar and cervical spine with neuropathy, migraine headaches, and obesity. She found the impairments, either singly or in combination, did not meet any of the listed impairments in 20 C.F.R Part 404. The ALJ determined Hutchins had the RFC for light work with restrictions which mirrored those posed to Horsman in the first hypothetical question at the administrative hearing. The ALJ thoroughly reviewed the objective medical evidence, including a January 2017 medical assessment executed by Dr. Mohammad Daaif ("Daaif"), a treating neurologist. Relying upon the testimony of Horsman, the ALJ found Hutchins was not disabled. (Tr. 19-31).

*Medical Evidence During the Relevant Period*

Hutchins was seen on August 2, 2015 after suffering a fall resulting in back pain. (Tr. 427). A cervical CT scan revealed straightening of the normal lordotic curvature of the cervical spine, with an impression of cervical strain/spasm and potential ligamentous injury. (Tr. 433). Hutchins spent the night in the hospital and was discharged on August 3 with Flexeril, Naprosyn, and Tramadol. (Tr. 428). No limitations were imposed by the hospital physician, who sent Hutchins for physical therapy.

Hutchins was seen on August 3, 2015, by Marion Hord, M.D. ("Hord"), who diagnosed thoracic back pain, lumbar spine pain, and left leg weakness. (Tr. 479). Hord directed Hutchins was "to go to work on light duty with no lifting pushing pulling or tugging. He is to have limited

4

walking and no climbing." (Tr. 479). On August 11, Hord found Hutchins was improving and planned to begin the physical therapy. (Tr. 485).

Hutchins began physical therapy on August 21, 2015. (Tr..449). His therapist noted over-exaggerated movements and strange, ataxic-like movements in bilateral hands/fingers and legs. (Tr. 450). The therapist also noted that Hutchins was very talkative and did not follow directions well. (Tr. 449–50). On August 27, Hutchins indicated to Hord that physical therapy was only giving minimal relief. (Tr. 488). Hutchins was discharged on September 25, 2015 after five visits, with the discharge reason being that he did not return after his September 17 visit. (Tr. 440). The treatment plan called for Hutchins to complete 8-12 visits. (Tr. 450).

A March 10, 2016 MRI of the lumbar spine showed no disk extrusion, canal stenosis, or nerve root impingement. (Tr. 472). It also found a posterior annular tear and small central protrusion of the L4–5 disk with no associated canal stenosis or nerve root impingement and mild left foraminal stenosis from asymmetric shallow left posterolateral-foraminal protrusion at L3–4 with no nerve root compression or displacement identified. (Tr. 472). An MRI of the thoracic spine showed small disk protrusions at the T1–2, T2–3, and T4–5 through T7–8 disks, with an annular fissure associated with the small central disk protrusion at the T7–8 level; no significant central spinal canal stenosis; and mild dehydration of the T4–5 and T5–6 disks. (Tr. 474).

Hutchins was seen in the emergency room after his brother hit him in the face with a brick on April 3, 2016. (Tr. 500). He was diagnosed with a contusion and laceration of the face. (Tr. 504). His wound was closed with sutures. (Tr. 504). He was discharged with no cognitive and/or functional deficits noted. (Tr. 502).

On June 7, 2016, Hutchins saw Tim Burson, M.D. ("Burson") for his back pain. (Tr. 537). Hutchins related that his pain was worsening and had become severe. (Tr. 537). A cervical spine MRI on June 14, 2016 showed sclerosis of the dens in the marrow; mild uncovertebral hypertrophy at C2–3, greater on the left without significant canal or foraminal narrowing; a small right central/foraminal disk osteophyte complex with uncovertebral hypertrophy mildly narrowing the right neural foramen, which may impinge upon the exiting ventral nerve root, with left neural foramen widely patent, and no significant canal narrowing at C3–4; no significant canal or foraminal narrowing at C4–5; a tiny posterior disk osteophyte complex with uncovertebral hypertrophy partially effacing the anterior thecal sac, AP dimension of the canal measuring approximately nine millimeters, and no significant foraminal narrowing at C5–6; a tiny posterior disk osteophyte complex effacing the anterior thecal sac, AP dimension approximately eight millimeters, bilateral uncovertebral hypertrophy left greater than right with mild left foraminal narrowing most pronounced inferiorly at C6-7; and no significant canal or foraminal narrowing at C7–T1. (Tr. 566).

A nerve conduction study on June 29, 2016 revealed a slight decrease in amplitude of some of the motor compound action potentials in both lower extremities that were not felt to be significant and normal sensory nerve action potentials. (Tr. 594–95). The exam revealed a mild degree of acute denervation changes in the left vastus lateralis and mild chronic denervation changes in the right tibialis anterior. (Tr. 595). This indicated mild left L4 radiculopathy and mild chronic right L5 radiculopathy. (Tr. 595).

Hutchins saw Daaif on July 28, 2016 with back pain that Hutchins described as moderate to severe in the middle back, lower back, and neck and radicular pain to the left shoulder, calf, foot, and thigh. (Tr. 712). Associated symptoms included decreased mobility, limping, loss of

balance, numbness in the lower extremity, spasms, tenderness, and tingling in the arms and legs. (Tr. 712). Daaif reviewed the June 2016 cervical spine MRI, the March 2016 thoracic spine MRI, the March 2016 lumbar spine MRI, and the June 2016 nerve conduction study, and diagnosed neck pain, lower back pain, lumbar and cervical disc disease, radicular pain, and paresthesias. Daaif recommended Hutchins "try to lose some weight and try some physical therapy to work on strengthening his back muscles. I also recommend no heavy lifting and hopefully his job will be able to make reasonable accommodations or he will need to file for disability." (Tr. 714). Daaif was to follow up in three months.

Hutchins saw Richard Wilson, M.D. ("Wilson") on September 6, 2016, complaining of neuropathy and hypertension. (Tr. 620). He walked with a noticeable limp and was diagnosed with hypertension and neuralgia. (Tr. 620–21).

Daaif saw Hutchins on October 17, 2016. Hutchins again described pain in the middle back, lower back, and neck and radicular pain to the left shoulder, calf, foot, and thigh. (Tr. 708). Likewise, Hutchins again described associated symptoms to include decreased mobility, limping, loss of balance, numbness in the lower extremity, spasms, tenderness, and tingling in the arms and legs. (Tr. 708). Daaif's diagnosis was the same as in July, except he added the following to the list: headaches, ataxic gait, and memory change. (Tr. 710). Daaif again recommended no heavy lifting and was optimistic that Hutchins' employer would make reasonable accommodations. (Tr. 710).

On November 21, 2016, Hutchins saw Iden Cowan, M.D. ("Cowan") at Pain Treatment Centers of America where he reported that his pain ranged from 5 out of 10 at the least and 10 out of 10 at the worst with an average of 8 out of 10. (Tr. 812). Cowan performed lumbar medial

branch blocks on December 2 and 22, 2016. (R. at 784, 808). On January 11, 2017, Hutchins reported an improvement in his neck and back pain with the injections. (Tr. 797–99).

Hutchins reported on January 24, 2017 that the nerve blocks improved his pain seventy to eighty percent for several hours and requested to proceed with neurotomy. (Tr. 804). He reported the severity as at least 3 out of 10 up to 10 out of 10, on average 5 out of 10. (Tr. 804). Cowan performed lumbar medial branch nerves neurotomy on January 26, 2017. (Tr. 802).

Daaif executed a physical medical source statement on January 27, 2017, indicating that Hutchins could occasionally lift ten pounds and never more; could occasionally twist, stoop, crouch, and climb stairs; never climb ladders; could sit for forty-five minutes at one time and for two hours in an eight-hour day; could stand for twenty minutes at one time and less than two hours in an eight-hour day; must walk for five minutes every forty-five minutes; must be permitted to shift at will between sitting and standing/walking; needed to take four to five unscheduled breaks during the day for five to ten minutes each; would be capable of low stress work; and would miss about two days per month due to his condition. (Tr. 905–08).

Cowan performed lumbar medial branch nerves neurotomy on February 16, 2017. (Tr. 840). Hutchins reported that his lumbar neurotomy had helped his pain over sixty percent on March 1, 2017. (Tr. 837). He reported his pain was 10 out of 10 at its worst and averaged 6 out of 10. (Tr. 837).

On May 11, 2017, Hutchins reported his pain was worsening and that its severity ranged from 4 out of 10 to 8 out of 10 with an average of 5 out of 10. (Tr. 882). Cowan performed a thoracic medial branch block on May 18 and on June 9, 2017. (Tr. 886, 888). Her first medial branch blocks resulted in an eighty percent improvement in pain. (Tr. 888). On July 12, 2017, she reported that the medial branch blocks resulted in a temporary relief of his pain of seventy to

eighty percent. (Tr. 911). Hutchins reported his pain as ranging from 3 out of 10 to 10 out of 10 with an average of 6 out of 10. (Tr. 911). He underwent another thoracic medial branch nerves neurotomy on August 10, 2017. (Tr. 968).

We now address the arguments of Hutchins.

**The ALJ erred in giving controlling weight to the opinions of non-examining state agency consultants over Daaif:**

A treating physician's medical opinions are given controlling weight if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence. *See Choate v. Barnhart*, 457 F.3d 865 (8th Cir. 2006). Here, Daaif opined in January 2017 that Hutchins could do very little. The ALJ addressed this opinion and discounted it. The ALJ was correct in doing so. Daaif examined Hutchins on three occasions – July and October of 2016, and January of 2017. The medical opinion offered by Daaif is at odds with his own treatment notes, where he found Hutchins to have 5/5 motor strength in all major muscle groups, imposed no other functional limitations, and recommended only that Hutchins avoid heavy lifting. Daaif's notation, on two occasions, that Hutchins would need an accommodation from his employer, is also at odds with his January 2017 opinion. These notations suggest Daaif's belief that Hutchins would struggle with performing heavy lifting and heavy exertional work, not that he was totally disabled.[2] The ALJ noted Daaif's opinion was inconsistent with his own reports. Further, the ALJ noted Daaif's finding of only mild impairments from his review of the MRIs, and that Daaif did not

---

[2]Hutchins' own testimony at the hearing was similar, in that he expressed frustration with being unable to perform his previous, heavy exertional work, but did not cite physical impairments other than his inability to sit which would preclude him from doing less strenuous jobs.

9

recommend surgery. The other medical evidence aligns with the treatment notes of Daaif, not with his January 2017 opinion. No other physician opined that Hutchins was disabled, and he typically was found to have normal strength, range of motion, and gait. As for the state agency physicians, they opined Hutchins could do light work with some restrictions. The ALJ did not embrace their opinions to the exclusion of Daaif. Rather, the ALJ cited these opinions, which he explicitly noted to be "not binding on the Commissioner," as consistent with the other medical evidence, excluding Daaif's January 2017 opinion. We find no error in the ALJ's treatment of Daaif's opinion, or in the treatment of the state agency findings. While a treating physician's opinion should not ordinarily be disregarded and is entitled to substantial weight, such an opinion may be discounted or even disregarded where other medical assessments are supported by better or more thorough medical evidence. *Fentress v. Berryhill*, 854 F.3d 1016 (8th Cir. 2017). Here, ample and valid reasons exist and were cited by the ALJ for discounting Daaif's opinion. The ALJ did not err in this regard, and her opinion is supported by substantial evidence.

**The ALJ erred in failing to address or evaluate new and material evidence in reaching her decision.**

The ALJ's decision was issued in October 2017, two months before Daaif issued an additional opinion regarding Hutchins' abilities. (Tr. 7-8). Daaif's December 2017 opinion was similar to his January 2017 opinion, which was addressed at length by the ALJ. The Appeals Council examined the December 2017 opinion and wrote: "We find this evidence does not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). Hutchins contends the December 2017 opinion was new, material, and compelling, and it was error for the Appeals Council to rule as it did. There is no error. Hutchins does not demonstrate a reasonable

probability that the checklist form submitted by Daaif in December 2017 would have changed the October 2017 decision. Given the ALJ's treatment of the earlier opinion, the absence of any new treatment by Daaif, the "new" opinion of Daaif falls far short of demonstrating the October 2017 decision would be altered.

In summary, substantial evidence supports the determinations reached by the ALJ. The Court is mindful that the Court's task is not to review the record and arrive at an independent decision, nor is it to reverse if we find some evidence to support a different conclusion. The test is whether substantial evidence supports the ALJ's decision. *See, e.g., Byes v. Astrue*, 687 F.3d 913, 915 (8th Cir. 2012). This test is amply satisfied in this case.

Therefore, we recommend the final decision of Berryhill be affirmed and Hutchins' complaint be dismissed with prejudice.

IT IS SO ORDERED this 8th day of August, 2018.

_____
UNITED STATES MAGISTRATE JUDGE